1

2

3

4

5

6

7

8

9

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

16

17

18

19

ANGELA HAMILTON, DANA MCDERMOTT,
MELANIE CREEL, SHAMILA HASHIMI,
QUINTARA HICKS, KIANA HOWELL, LISA
LAZZARA, ALICIA MILLER, SUSIE SCOTT,
TERRI SEASTROM, TAYLOR SMITH, AND
SARA WOOD, individually and on behalf of all
others similarly situated,

Plaintiffs,

v.

NUWEST GROUP HOLDINGS, LLC,

Defendant.

Case No. 2:22-cv-01117 RSM

**PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY
APPROVAL OF CLASS AND
COLLECTIVE ACTION
SETTLEMENT AND TO DIRECT
CLASS NOTICE**

**NOTE ON MOTION CALENDAR:**
January 3, 2025

20

21

22

23

24

25

26

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
CLASS NOTICE - i

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## **INTRODUCTION**

After more than two years of litigation, conditional collective action certification, conducting a nationwide notice process resulting in more than 2,300 opt-ins, and two in-person mediation sessions overseen by a third-party mediator, the parties agreed to a $4,400,000 non-reversionary class and collective action settlement. This proposed settlement should be approved as a fair, reasonable, and adequate resolution of these contested claims.

This proposed settlement resolves claims against NuWest under the Fair Labor Standards Act and various state laws based on two theories of liability: First, Plaintiffs allege that NuWest violated the FLSA by categorizing significant portions of its travel nurses' compensation as stipends and then excluding the value of those stipends from their regular rate of pay resulting in unpaid overtime. Second, Plaintiffs further allege that NuWest violated state laws by engaging in a pattern and practice of making take-it-or-leave-it demands that its nurses accept lower pay than originally promised in the middle of their contracts or be terminated. These are referred to throughout as the "overtime claims" and "mid-contract rate reduction claims," respectively.

With respect to the settlement of the overtime claims on a collective basis, FLSA Collective Members will recover their *pro rata* share of the overtime settlement allocation (85% of the net fund) in exchange for a release of claims that were or could have been asserted based on the facts alleged in the operative Complaint. Plaintiffs' counsel estimate that the average *per capita* settlement check for overtime claims (net of all fees and costs) will conservatively approximate $980, which represents a large portion of the likely recovery based on Plaintiffs' counsel's damages analysis. Importantly, following final approval of the settlement, the

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
CLASS NOTICE - 1

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

settlement administrator will mail each FLSA Collective Member a check for their share of the overtime settlement without the need to submit a claim form.

With respect to Mid-Contract Rate Reduction Class Members, the settlement provides meaningful relief on these novel claims. Any NuWest travel nurse who worked during the relevant period may submit a claim for either their *pro rata* share of alleged documented wage losses due to a mid-contract rate reduction or a *pro rata* share of a lesser amount for alleged undocumented wage losses due to a mid-contract rate reduction. Unlike FLSA Collective Members, Mid-Contract Rate Reduction Class Members will release only claims that were or could have been asserted based on the facts alleged related to mid-contract rate reductions.

This was a complicated and novel case. The proposed settlement provides immediate relief to these healthcare workers in proportion to the strength and value of their claims. Plaintiffs respectfully ask the Court to grant preliminary approval, direct notice to the class through the proposed notice program, and schedule a final approval hearing approximately 150 days from granting preliminary approval of the settlement or thereafter at the Court's convenience.

## **BACKGROUND**

### I.    THE NATURE OF THE CLAIMS

Plaintiffs are travel nurses who worked for NuWest doing short-term assignments at hospitals around the country. Each of the causes of action in the operative Second Amended Complaint is premised on one of two theories of liability. Ricke Decl. at ¶ 14.

The first set of claims arise out of allegedly unpaid overtime. Plaintiffs assert that NuWest categorizes significant portions of its travel employees' compensation as "stipends" (*i.e.*, expense reimbursement) and then excludes the value of those stipends from their "regular rate" of pay

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
CLASS NOTICE - 2

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

1    when compensating their overtime hours. Plaintiffs argued that NuWest's former practice of

2    tying stipends to the quantity of work meant these were wages that must be included in the regular

3    rate. *See, e.g.*, *Clarke v. AMN Servs., LLC*, 987 F.3d 848, 857 (9th Cir. 2021), *cert. denied*, 142

4    S. Ct. 710 (2021) (reversing summary judgment for healthcare staffing company and directing

5    that judgment be entered for the travel nurses because "the deductions connect the amount paid

6    to the hours worked while still away from home, thereby functioning as work compensation

7    rather than expense reimbursement.").[1] NuWest admits it tied stipends to the quantity of work

8    until, in mid-2022, it modified its employment contracts and altered its systems to cease this

9    practice; however, NuWest does not admit it violated the Fair Labor Standards Act with respect

10   to its travel nurses' rates of pay. *See* NuWest's Opp. to Pls.' Mot. for Conditional Collective

11   Certification, ECF No. 43 at 3–4 (explaining that, by June 2022, it had stopped conditioning

12   receipt of stipends on the quantity of work performed). Ricke Decl. at ¶ 15.

13

14          The second set of claims are the mid-contract rate reduction claims. Plaintiffs assert that

15   NuWest engaged in a pattern and practice of offering travel nurses fixed-term contracts at a set

16   rate of pay and, once the nurse traveled across the country for the assignment, NuWest offered

17   the nurse a take-it-or-leave-it demand to accept less pay or be terminated. *See* Compl., ECF No.

18   123 at ¶¶ 23–88 (alleging each Plaintiff's experience with NuWest's mid-contract rate reduction

19   practice). Plaintiffs assert this theory of liability under various state wage statutes and state

20   common law. *See generally* Compl., ECF No. 123. A key allegation in the mid-contract rate

21

22

23

24          [1] The factual and legal basis for Plaintiffs' overtime claims under both the FLSA and

25   various state laws are extensively addressed in Plaintiffs' Motion for Conditional Collective
     Certification. ECF No. 42.

26   PLAINTIFFS' UNOPPOSED MOTION FOR
     PRELIMINARY APPROVAL OF CLASS AND
     COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
     CLASS NOTICE - 3

reduction claims was that NuWest concealed from these workers that it had engaged in a pattern and practice of reducing rates and that it was likely to occur to these nurses. *Id*. In or around mid-2022, NuWest added language to its employment contracts with travel nurses advising that these types of rate reductions could occur during an assignment. Ricke Decl. at ¶ 16. Regardless, NuWest contends it had every right to modify travel nurses' rates of pay.

## II.    THE PROCEDURAL HISTORY OF THE LITIGATION

Nearly every aspect of this case has been contested by the parties. Plaintiffs filed their original Complaint on August 20, 2022. ECF No. 1. Shortly thereafter, NuWest moved to dismiss for failure to state a claim and lack of standing. ECF No. 11. In response, Plaintiffs filed their First Amended Complaint, which addressed NuWest's motion. ECF No. 21.

In a renewed motion to dismiss, NuWest again challenged Plaintiffs' standing to assert nationwide claims under the state wage statutes where the Plaintiffs themselves did not work and challenged the sufficiency of Plaintiffs' fraud allegations. *See generally* NuWest's Revised Mot. to Dismiss Pursuant to FRCP 12(b)(1) & (6), ECF No. 25. Plaintiff opposed the motion (ECF No. 33) arguing that Plaintiffs' state law overtime claims were sufficiently cohesive with those of absent class members to permit the claims to proceed at the motion to dismiss stage and that Plaintiffs had articulated the fraud claims with sufficient particularity. After NuWest' reply brief (ECF No. 34), the Court denied the motion to dismiss as to the fraud claims and granted it without prejudice as to the state law claims asserted for states where the named Plaintiffs did not work. *Hamilton v. NuWest Grp. Holdings LLC*, 2023 WL 130485 (W.D. Wash. Jan. 9, 2023).

Plaintiffs then moved for conditional collective certification in March 2023. *See* ECF No. 42. In the interim period, Plaintiffs' counsel had continued their fact investigation, collecting

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
CLASS NOTICE - 4

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

documents and information from the Plaintiffs and opt-ins to support a collective certification motion. Plaintiffs supported the collective certification motion with declarations, contracts, and paystubs from five NuWest travel nurses who had worked overtime around the country and had the value of their stipends excluded from their regular rate. *See generally* ECF No. 42. NuWest opposed conditional collective certification after the so-called de-coupling of stipends and hours worked in mid-2022, but conceded certification was appropriate for the earlier period. ECF No. 43. Ultimately, after Plaintiffs' reply brief (ECF No. 45), the Court granted Plaintiffs' motion in part and approved the contested notice plan. ECF No. 52. Following the issuance of notice to 6,053 travel nurses, 2,321 NuWest travel nurses opted into the case to assert their overtime claims. ECF No. 119.

## III.    THE    LENGTHY    FORMAL    AND    INFORMAL    DISCOVERY    AND    SETTLEMENT PROCESS

During the opt-in period, the parties met and conferred about the schedule, discovery, and other items required by Rule 26(f). In May 2023, Plaintiffs served their first sets of written discovery on NuWest. These discovery requests and subsequent responses and objections resulted in a significant meet-and-confer process that lasted several months. During this period, NuWest also served written discovery requests on the Plaintiffs, to which Plaintiffs and responded, and which were ultimately folded into the meet and confer process. During the meet-and-confer process and at the conclusion of the opt-in period, the parties determined that settlement discussions would be appropriate prior to engaging in Phase II of discovery. Plaintiffs then filed a stipulated Second Amended Complaint that added new Plaintiffs who worked in

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
CLASS NOTICE - 5

additional states so that the parties could have a full view of potential exposure in advance of mediation. ECF Nos. 121–23; Ricke Decl. at ¶ 17.

Plaintiffs' counsel sent NuWest a comprehensive data and document request for purposes of mediation. This exchange of information took months. The parties ultimately agreed to mediate with Lynn P. Cohn of Northwestern Pritzker School of Law on February 6, 2024 in Chicago. The parties provided the mediator with a thorough analysis of the law and facts in advance of the mediation. Although progress was made at the mediation, the case did not settle. The parties agreed to further exchange of information and ultimately set a second in-person mediation in Chicago with Ms. Cohn on July 9, 2024. Again, although substantial progress was made, the case did not settle at mediation. Finally, after numerous calls and communications among counsel and with the mediator, the parties signed a term sheet to resolve this case on a class and collective basis on August 27, 2024. Ricke Decl. at ¶ 18.

## SETTLEMENT TERMS

### I.    THE $4,400,000 NON-REVERSIONARY COMMON FUND

In exchange for the releases described below, NuWest will pay $4,400,000 into a Qualified Settlement Fund administered by the settlement administrator. That common fund will be used to pay class and collective members, the cost of settlement administration, service awards for the 12 named plaintiffs, Plaintiffs' counsel's attorneys' fees and expenses, and a modest reserve fund. *See* Ex. 1, Sett. Agrmt. ¶¶ 1.15, 1.26. In terms of scope, only FLSA Collective Members and Mid-Contract Rate Reduction Class Members will release claims through this

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
CLASS NOTICE - 6

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

settlement.[2] The FLSA Collective Members are those 2,321 NuWest travel nurses with overtime claims who previously filed a Consent to Join in the case. *Id*. at ¶ 1.14. Mid-Contract Rate Reduction Class Members are all persons who are, or have been, employed by NuWest at any point from January 1, 2020 through December 20, 2024 as travel nurses and who worked all or part of an assignment for NuWest as a travel nurse. *Id*. at ¶ 1.20. By definition, all FLSA Collective Members are necessarily also Mid-Contract Rate Reduction Class Members. The net fund (the gross amount less Court approved payments for settlement administration, service awards, and Plaintiffs' counsel's fees and expenses), will be allocated 85% to the FLSA Collective Members and 15% Mid-Contract Rate Reduction Class Members. *Id*. at ¶ 4.5.

The FLSA Collective Members share of the net settlement fund will be allocated *pro rata* based on individuals' overtime damages under the FLSA. There will be no claims process for the FLSA Collective Members to receive the overtime portion of their settlement shares. Following final approval, they will simply be mailed a check. *Id*.

Mid-Contract Rate Reduction Class Members can submit two types of claims under the settlement. Those class members with documented wage losses due to a mid-contract rate reduction are eligible to claim a *pro rata* portion of 90% of the Mid-Contract Rate Reduction Class settlement allocation. Those class members who attest they experienced a mid-contract rate reduction but do not have documents supporting losses can likewise submit a claim for an even portion of the remaining 10% of the allocation. *Id*.

All settlement payments made to FLSA Collective Members and Mid-Contract Rate

---

[2] Individuals who did file a Consent to Join the FLSA Collective and who are not Mid-Contract Rate Reduction Class Members will not release any claims.

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
CLASS NOTICE - 7

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

Reduction Class Members will be treated as 35% wages (reported on an IRS Form W-2) and 65% penalties and interest (reported on an IRS Form 1099). *Id.* at ¶ 4.6.

## II.    THE SCOPE OF THE RELEASE

The FLSA Collective Members and Mid-Contract Rate Reduction Class Members both will release claims that are reasonably tailored to the claims for which those workers are being compensated. First, FLSA Collective Members will release claims that were or could have been asserted based on the facts alleged in the operative Complaint through the date of the Settlement Agreement. *Id.* at ¶ 9.1. The release for FLSA Collective Members (all of whom have already filed a Consent to Join the case) is broader than the Mid-Contract Rate Reduction Class release, which is limited to mid-contract rate reduction claims and any other claims related to or arising from those claims that were or could have been asserted based on the facts alleged in the operative Complaint through the date the Settlement Agreement. *Id.* Importantly, Mid-Contract Rate Reduction Class Members will not release FLSA claims unrelated to the rate reduction through this settlement unless they are also FLSA Collective Members.[3]

## II.    THE NOTICE PROCESS

Within 45 days of preliminary approval of the settlement, the parties will provide the Settlement Administrator with all of the information necessary to identify FLSA Collective Members and Mid-Contract Rate Reduction Class Members and provide them notice by U.S. Mail at their last known address. *See* Ex. 1, Sett. Agrmt. at ¶ 6.1. Within 75 days of preliminary

---

[3] NuWest has agreed to class certification and to not challenge the conditional collective action certification for settlement purposes only. If the Court does not approve the settlement, NuWest reserves the right to contest class certification and to seek to decertify the collective action.

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
CLASS NOTICE - 8

approval, the Settlement Administrator will mail one notice to FLSA Collective Members (Ex. 1 to the Settlement Agreement) and another notice to Mid-Contract Rate Reduction Class Members (Ex. 2 to the Settlement Agreement). *Id.* at ¶¶ 1.5, 6.2. There are two notices because Mid-Contract Rate Reduction Class Members who did not return a Consent to Join form consistent with the Court's earlier deadline of September 2023 are not eligible to participate in the FLSA Collective Member settlement allocation (and are also not releasing those claims). Providing this irrelevant information to Mid-Contract Rate Reduction Class Members would likely lead to confusion.

Following the issuance of the notices, FLSA Collective Members and Mid-Contract Rate Reduction Class Members will have 90 days from the mailing of the notices to object or request exclusion. That said, FLSA Collective Members may not seek exclusion from the settlement because they already affirmatively opted in to the litigation. *Id.* at §§ 6–7.

Within 90 days of the mailing of the notices, Mid-Contract Rate Reduction Class Members must submit a Claim Form (Ex. 3 to the Settlement Agreement) to be eligible for payment for a mid-contract rate reduction. The ultimate authority to approve or not approve claims by Mid-Contract Rate Reduction Class Members rests with the Settlement Administrator in consultation with Plaintiffs' counsel. *Id.* at ¶ 4.5.

## ARGUMENT

## I.    THE SETTLEMENT DESERVES PRELIMINARY APPROVAL

Settlement approval under Federal Rule of Civil Procedure 23(e) typically occurs in two stages. *Jordan v. Nationstar Mortg., LLC*, 2018 WL 11436310, at *1 (E.D. Wash. Nov. 26, 2018). First, the district court determines whether to preliminarily approve the settlement. *See* Fed. R.

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
CLASS NOTICE - 9

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

Civ. P. 23(e)(1). To secure preliminary approval, the plaintiff must show that the court is likely to (1) approve the proposed settlement as fair, reasonable, and adequate after considering the factors in Rule 23(e)(2); and (2) certify the settlement class after the final-approval hearing. Fed. R. Civ. P. 23(e)(1)(B). If the court grants preliminary approval, it must direct notice to the proposed settlement class and give class members an opportunity to object to or opt out of the settlement. *See* Fed. R. Civ. P. 23(c)(2)(b); Fed. R. Civ. P. 23(e)(1), (5). Second, after a hearing, the court decides whether to grant final approval to the settlement and certify the settlement class. *See* Fed. R. Civ. P. 23(e)(2); *Stedman v. Progressive Direct Ins. Co.*, at *3 (W.D. Wash. Sept. 14, 2023).

Settlements of collective action claims under the FLSA also "require[] court approval." *Chery v. Tegria Holdings LLC*, 2024 WL 3730981, at *2 (W.D. Wash. July 31, 2024); *see also Kerzich v. County of Tuolumne*, 335 F. Supp. 3d 1179, 1183 (E.D. Cal. 2018) ("Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court."). "Before approving a settlement, the [c]ourt 'examines whether [the] settlement is a fair and reasonable resolution of *a bona fide* dispute.'"[4] *Chery*, 2024 WL 3730981, at *2 (quoting of *Cavazos*, 2022 WL 506005, at *5). When determining whether the settlement is fair and reasonable, courts routinely apply "the well-established criteria for assessing whether a class action settlement is 'fair, reasonable, and

---

[4] Here, a *bona fide* dispute certainly exists: Plaintiffs assert that NuWest violated the FLSA "by failing to include all forms of remuneration in the 'regular rate' of pay calculation," while NuWest "has denied, and continues denying, it . . . failed to pay any employees as required by the FLSA." Sett. Agmt. at 1 ; *see also, e.g.*, *Cavazos v. Salas Concrete Inc.*, 2022 WL 506005, at *13 (E.D. Cal. Feb. 18, 2022) (finding bona fide dispute existed where "[p]laintiff assert[ed] that defendant violated the FLSA by failing to pay minimum and overtime," and defendant had "denie[d] and continue[d] to deny" plaintiff's assertions).

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
CLASS NOTICE - 10

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

adequate' under [Rule] 23(e)," giving "due weight to the policy purposes behind the FLSA." *Id.* (quoting *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016)). As explained in detail below, the settlement meets the requirements for preliminary approval.

### A.    The settlement is fair, reasonable, and adequate.

Under Rule 23(e)(2), a court may approve a settlement as "fair, reasonable, and adequate" after considering whether: (1) "the class representative and class counsel have adequately represented the class; (2) "the proposal was negotiated at arm's length"; (3) "the relief provided for the class is adequate,"; and (4) "the proposal treats class members equitably relative to each other." The court also considers the factors identified by the Ninth Circuit in *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004), which largely overlap with the Rule 23(e)(2) factors. These factors, addressed in turn below, support preliminary approval here.

### 1.    Plaintiffs and their counsel have and will represent the class and collective members adequately.

The first Rule 23(e)(2) factor considers whether the class representatives and counsel will provide adequate representation. Fed. R. Civ. P. 23(e)(2)(A). Courts analyze this factor in the same manner that they evaluate adequacy under Rule 23(a)(4). *See O'Connor v. Uber Techs., Inc.*, 2019 WL 1437101, at *6 (N.D. Cal. Mar. 29, 2019). Adequacy is satisfied when (1) the named plaintiff and counsel have no conflicts with the class; and (2) plaintiff will "prosecute the action vigorously." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

The best indication of adequacy is that Plaintiffs engaged counsel who have obtained a favorable result for class and collective members. As discussed below, this $4.4 million, non-reversionary settlement will make meaningful payments to collective members (conservatively, approximately $980 *per capita* on average) and will allow Mid-Contract Rate Reduction Class

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
CLASS NOTICE - 11

Members to recover documented wage losses due to a rate reduction. Plaintiffs' counsel have significant experience litigating wage and hour class and collective actions and they believe this settlement represents a strong result for the workers.[5] Ricke Decl. at ¶¶ 4–13, 19–30.

### 2. The Settlement is the product of arm's-length negotiations

The second Rule 23(e)(2) factor asks whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). The answer here is yes. The parties reached the settlement after extensive good-faith, non-collusive, arm's-length negotiations between experienced wage and hour counsel on both sides. Before entering mediation, the parties engaged in extensive informal and formal discovery, which armed Plaintiffs' counsel with sufficient information to reach a reasoned, well-informed settlement. *See also Nat'l Rural Telecommc'ns, Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1042 (S.D. Cal. 2015) ("[A]s long as the parties have sufficient information to make an informed decision about settlement, 'formal discovery is not a necessary ticket to the bargaining table.'" (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998))). Plaintiffs' counsel have decades of class action experience and have successfully litigated many complex employment and wage and hour matters such as this one to favorable resolutions. Ricke Decl. at ¶¶ 4–13. Their view that the settlement is fair, adequate, and reasonable deserves deference. *See Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*, 221

---

[5] After winning a class and collective jury verdict for meat-packing plant workers, Judge Marten (Ret.) of the District of Kansas observed of the wage and hour lawyers at Stueve Siegel Hanson that "it appears that plaintiffs' counsel's experience in wage hour class actions has unmatched depth." *Garcia v. Tyson Foods, Inc.*, 2012 WL 5985561, at *4 (D. Kan. Nov. 29, 2012), *aff'd*, 770 F.3d 1300 (10th Cir. 2014).

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
CLASS NOTICE - 12

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

F.R.D. 523, 528 (C.D. Cal. 2004) (noting that courts should give "[g]reat weight . . . to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation" (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997))).

Moreover, the parties' negotiations were facilitated by Northwestern University Pritzker School of Law Professor Lynn Cohn, a mediator with substantial experience in employment litigation. Ricke Decl. at ¶¶ 17–18. Ms. Cohn's active role in the mediation reinforces the non-collusive nature of the settlement. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (noting that the "presence of a neutral mediator . . . weigh[s] in favor of a finding of non-collusiveness"); *Torres v. Mercer Canyons, Inc.*, 2017 WL 11675391, at *2 (E.D. Wash. Mar. 29, 2017) (same). The second Rule 23(e)(2) factor supports preliminary approval.

### 3. The settlement provides adequate relief for the class.

The third Rule 23(e)(2) factor focuses on the adequacy of the relief provided to the class. *See* Fed. R. Civ. P. 23(e)(2)(C). When determining whether such relief is adequate, courts consider: (1) "the costs, risks, and delay of trial and appeal"; (2) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; (3) "the terms of any proposed award of attorney's fees, including timing of payment"; and (4) "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

### a. The relief class and collective members will receive presents a fair compromise given the costs, risks, and delay of trial and appeal.

The Settlement Agreement creates a $4,400,000 non-reversionary settlement fund. Sett.

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
CLASS NOTICE - 13

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Agmt. at ¶ 1.26. It allocates 85 percent of the net settlement fund to FLSA Collective Members and the remaining 15 percent to Mid-Contract Rate Reduction Class Members.[6] *Id.* at ¶ 4.5(a). Based on Plaintiffs' counsel's damages analysis—created using complete wage data for the overtime claims and a sampling and exhaustive manual review of wage documents for the mid-contract rate reduction claims—showed that various levels of exposure for NuWest depending on the assumptions made. Ricke Decl. at ¶ 21.

For example, if the damages on the overtime claims were cut-off in mid-2022 (*i.e.*, crediting NuWest's alleged "de-coupling" of stipends and hours worked), Plaintiffs' counsel calculated NuWest's exposure for unpaid overtime and liquidated damages under the FLSA as $3.63 million. In Plaintiffs' counsel's view, these damages are strong under the Ninth Circuit's *Clarke* decision. That said, although less certain, the damages on the FLSA claims could be much higher if Plaintiffs' other theories of liability were successful (*e.g.*, Plaintiffs alleged that NuWest's practice of cutting stipends mid-contract showed that these stipends actually functioned as wages and not as expense reimbursement). Ricke Decl. at ¶ 22.

With respect to the mid-contract rate reduction claims, damages were less certain and potentially varied considerably based on certain legal and factual issues. NuWest provided comprehensive documentary and wage information on a ten percent sample of the FLSA opt-ins, which was used to extrapolate for a Rule 23 nationwide class. The thrust of the sample analysis was to determine the frequency of mid-contract rate reductions and to determine the average

---

[6] The net settlement amount is the gross amount, $4,400,000, minus deductions for the cost of settlement administration, the approved attorney fees and expenses, the approved service awards to Plaintiffs, and a modest reserve fund. Sett. Agmt. ¶ 1.15.

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
CLASS NOTICE - 14

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

amount lost as wages. Ricke Decl. at ¶ 23.

NuWest initially provided a summary of the assignment agreements or contracts signed by each nurse. Plaintiffs' counsel cross-referenced the summary with each nurse's pay data to identify and calculate the potential damages for all apparent mid-contract rate reductions. This analysis was based on the face of the data and the summary—irrespective of the potential rationales for rate reductions. This analysis resulted in the above-referenced maximum potential exposure of $12,140,343. NuWest then provided a contract overlay for each nurse in the sample identified as having potentially experienced a mid-contract rate reduction. Following manual review of the contracts, the maximum potential exposure was revised down to approximately $5.4 million. The contract overlay indicated that certain mid-contract rate reductions from the initial analysis were, for example, rate reductions occurring between contracts or as part of contract negotiations—not fraudulent or improper reductions occurring in the middle of a nurse's assignment. NuWest contested the revised estimate, contending that its maximum exposure was closer to $1 million. NuWest argued that it could explain most of the remaining mid-contract rate reductions, claiming, for example, certain mid-contract rate reductions were in fact the byproduct of a nurse agreeing to extend their assignments at a lower rate. The parties did not resolve their differences on this issue, and this damages estimate is still hotly contested. Ricke Decl. at ¶ 24.

Thus, in Plaintiffs' counsel's view, allocating the net fund in proportion to the strength of the two groups' base-line damages claims was appropriate. This resulted in the 85% allocation to the FLSA Collective and 15% allocation to the Rate Reduction Class. This allocation reflects that proportional base-line damages spread as well as the relative strength of the claims. Ricke Decl. at ¶ 25.

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
CLASS NOTICE - 15

1    This settlement is thus a strong result given the costs, risk, and delay that would come

2    with continued litigation. *See* Fed. R. Civ. P. 23(e)(2)(C)(i); *In re Linkedin User Privacy Litig.*,

3    309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Immediate receipt of money through settlement, even if

4    lower than what could potentially be achieved through ultimate success on the merits, has value

5    to a class, especially when compared to risky and costly continued litigation."). If litigation were

6    to proceed, there is a risk that the Court might not certify the class or might decertify the

7    collective. *See Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 392 (C.D. Cal. 2007) ("The value

8    of a class action 'depends largely on the certification of the class,' and . . . class certification

9    undeniably represents a serious risk for plaintiffs in any class action lawsuit." (quoting *In re*

10   *GMC Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 802 (3d Cir. 1995))).

11

12         Moreover, while Plaintiffs' counsel believe in the strength of the case, orders in similar

13   cases involving allegations that an employer engaged in and failed to disclose a pattern and

14   practice of reducing travel nurses' wages mid-contract show that uncertainty remains. *See, e.g.*,

15   *Egan v. Fastaff, LLC*, 2024 WL 719006 (D. Colo. Jan. 31, 2024) (denying motion to dismiss as

16   to portion of travel nurses' complaint alleging tort-based bait-and-switch claims but granting it

17   as to contract-based claims). Additionally, even though the overtime claims here are similar to

18   those at issue in *Clarke*, Plaintiffs still would have had to survive a decertification motion, defeat

19   summary judgment, and prevail at trial. In addition to carrying risk, it also would take years

20   before these workers were paid. The "tangible, immediate benefits" of settlement outweigh the

21   uncertainties, expense, and delays associated with continued litigation. *Ebarle v. Lifelock, Inc.*,

22   2016 WL 234364, at *8 (N.D. Cal. Jan. 20, 2016); *see also DIRECTV*, 221 F.R.D. at 526 ("In

23

24

25

26   PLAINTIFFS' UNOPPOSED MOTION FOR
     PRELIMINARY APPROVAL OF CLASS AND
     COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
     CLASS NOTICE - 16

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results").

> **b.** **Class and collective members are eligible for relief through straightforward processes.**

FLSA Collective Members need not file claim forms to receive a settlement payment. Instead, they will automatically receive a checks for their settlement amounts following final approval. Sett. Agmt. at ¶ 4.5(b). Class members, for their part, will need to submit a simple claim form by mail or online to obtain a settlement payment. *Id.* These members may make one of two types of claims: (1) a "Documented Mid-Contract Rate Reduction Claim," which requires documentation that tends to reasonably establish the class member experienced a mid-contract rate reduction and the amount of the loss; or (2) a "No Document Mid-Contract Rate Reduction Claim," which requires only the identification of an assignment worked for NuWest during the class period, the name and location of the healthcare facility for the assignment, the dates of the assignment, and a description of the type of rate reduction experienced. Sett. Agmt. ¶ 4.5(c). "Documented Mid-Contract Rate Reduction Claims will be paid first up to 90 percent of the Net Settlement Amount allocated to the class." *Id.* The remainder will be evenly allocated among all class members who submit a No Document Mid-Contract Rate Reduction Claim. *Id.* The proposed methods for distributing the Settlement to class members are fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).

> **c.** **Plaintiffs' counsell will seek reasonable attorney fees and costs and service awards that pose no obstacle to preliminary approval.**

Plaintiffs' counsel intend to seek approval of an attorneys' fee award of no more than one-third, or approximately 33 percent, of the gross settlement amount, plus reasonable litigation

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
CLASS NOTICE - 17

expenses. Although 25 percent is the benchmark in the Ninth Circuit, this "benchmark percentage 'can be adjusted upward or downward[] depending on the circumstances.'" *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022) (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (en banc)); *see also Waldbuesser v. Northrop Grumman Corp.*, 2017 WL 9614818, at *3 (C.D. Cal. Oct. 24, 2017) (collecting cases in which courts "awarded fees of one-third of a settlement fund"). At this preliminary approval stage, Plaintiffs' counsel's agreement not to seek fees that exceed one-third of the settlement is sufficiently reasonable. *See Aquino v. 99 Cents Only Stores LLC*, 2023 WL 8696362, at *7 (C.D. Cal. July 11, 2023) (finding attorney-fees request for one-third of settlement amount sufficiently reasonable at preliminary-approval stage, subject to further scrutiny at final-approval stage); *Reyes v. Carehouse Healthcare Ctr., LLC*, 2018 WL 11356427, at *6 (C.D. Cal. Apr. 5, 2018) ("[C]ounsel's intention to seek an award of up to one-third the amount of the [g]ross [s]ettlement [f]und will not stand in the way of preliminary approval.").

Plaintiffs' counsel will also seek service awards of no more than $5,000 for Plaintiffs as compensation for their role as named plaintiffs in this action. Service awards are common in class and collective actions, and a $5,000 award is well within the range of approval for settlements that provide significant benefits to the class. *See Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017) ("Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable."); *see also Gutierrez v. E&E Foods*, 2023 WL 9533758, at *3 (W.D. Wash. June 1, 2023) (noting that district courts usually "approve service awards . . . in FLSA collective actions") *Hall v. Marriott Int'l, Inc.*, 2024 WL 3367518, at *7 (S.D. Cal. July 10, 2024) (explaining that "service awards are fairly typical" in class actions).

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
CLASS NOTICE - 18

**d.    There are no other agreements required to be identified under Rule 23(e)(3).**

The only agreement among the parties is the Settlement Agreement. Ricke Decl. at ¶ 19.

**4.    The settlement treats all class and collective members equitably.**

The final Rule 23(e)(2) factor considers whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). As explained above, the Settlement Agreement allocates 85 percent of the net settlement amount to the FLSA Collective Members and 15 percent to the Mid-Contract Rate Reduction Class Members. Sett. Agmt. ¶ 4.5(a). This allocation recognizes that the FLSA Collective Members possess claims that are more certain as to both liability and damages under existing Ninth Circuit case law. *See, e.g.*, *Clarke*, 987 F.3d 848. That said, in Plaintiffs' counsel's view, the settlement allocation tracks the approximate distribution of likely recovery between the overtime claims and the mid-contract rate reduction claims considering the relative exposure posed by the two types of claims. Ricke Decl. at ¶¶ 21–25. The settlement is fair, adequate, reasonable, and in the best interests of the class and collective members given the uncertainty of continued litigation.

**B.    Class certification for settlement purposes is warranted.**

Certification of a settlement class is "a two-step process." *Rinky Dink Inc v. Elec. Merch. Sys. Inc.*, 2015 WL 11234156, at *2 (W.D. Wash. Dec. 11, 2015). First, the court must find that the proposed settlement class satisfies Rule 23(a)'s four requirements: numerosity, commonality, typicality, and adequacy. *Id.* And second, the court must find that "the proposed class . . . satisf[ies] at least one of the three requirements listed in Rule 23(b)." *Id.* Here, Plaintiffs contend, and NuWest does not dispute (for settlement purposes only), that the proposed class meets the requirements for class certification under Rule 23(a) and Rule 23(b)(3).

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND TO DIRECT CLASS NOTICE - 19

1

### 1.    The class meets the requirements of Rule 23(a)

2

#### a.    The class is sufficiently numerous.

3

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

4

impracticable." Although no strict numerical test defines numerosity, courts in this circuit

5

generally find the requirement satisfied when there are at least 40 potential class members. *See*

6

*Rinky Dink*, 2015 WL 11234156, at *3. The class here includes "all persons who are, or have

7

been, employed by NuWest at any point during the class period as travel nurses and who worked

8

all or part of an assignment for NuWest as a travel nurse"—a number that far exceeds 40. Sett.

9

Agmt. ¶ 1.20. Indeed, NuWest employs thousands of similarly situated travel nurses across the

10

country as evidenced by the 2,321 travel nurses who opted into the case, all of whom are Mid-

11

Contract Rate Reduction Class Members. For purposes of settlement, the numerosity requirement

12

is therefore satisfied.

13

14

#### b.    The class members share common questions of law and fact.

15

Rule 23(a)(2) requires "questions of law or fact common to the class." Commonality

16

"does not turn on the number of common questions, but on their relevance to the factual and legal

17

issues at the core of the purported class' claims." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161,

18

1165 (9th Cir. 2014). Indeed, "'[e]ven a single [common] question' capable of generating

19

'common answers' apt to drive resolution of the litigation" will do. *Rinky Dink*, 2015 WL

20

11234156, at *3 (second alteration in original) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

21

338, 350, 359 (2011)).

22

23

Here, each class member worked for NuWest while the company is alleged to have

24

engaged in a pattern and practice of mid-contract rate reductions. Whether NuWest maintained

25

26

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
CLASS NOTICE - 20

a pattern and practice of reducing its travel nurses' compensation midstream and failed to disclose this to its workers are question commons to all class members. These common questions, in turn, will generate common answers "apt to drive the resolution of the litigation" for the entire class. *Dukes*, 564 U.S. at 350. Thus, for settlement purposes, this case meets the commonality requirement.

**c.      The proposed class representatives' claims are typical.**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." This typicality requirement ensures that "the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. at 338. Measures of typicality include "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Here, like all class members, Plaintiffs worked as travel nurses for NuWest and it was not disclosed to them that NuWest may reduce their pay mid-contract. The claims on which Plaintiffs seek certification arise from the same course of conduct and are based on the same legal theories. Their claims are thus typical of the class they seek to represent.

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
CLASS NOTICE - 21

1

**d.    The proposed Class Representatives and Class Counsel have and will continue to zealously represent the class.**

2

3    Rule 23(a)(4)'s adequacy requirement is met when, as here, "the representative parties

4    will fairly and adequately protect the interests of the class." "This requirement is rooted in due-

5    process concerns—'absent class members must be afforded adequate representation before entry

6    of a judgment which binds them.'" *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165

7    (9th Cir. 2013) (quoting *Hanlon*, 150 F.3d at 1020). For the reasons discussed above, *see supra*

8    Section I.A.1, and for settlement purposes, the class members' interests have been and will

9    continue to be fairly and adequately protected by Plaintiffs and their counsel.

10    **2.    The class meets the requirements of Rule 23(b)(3).**

11

12    Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact

13    common to class members predominate over any questions affecting only individual members[]

14    and . . . a class action is superior to other available methods for fairly and efficiently adjudicating

15    the controversy." Here, the common questions—*e.g.*, did NuWest offer fixed term assignments

16    with a set rate of pay while concealing a pattern and practice of breaching those agreements—

17    predominate over any questions affecting only individual members. These questions can be

18    resolved using the same evidence for all class members and are exactly the kind of predominant

19    common issues that make class certification appropriate. *See Tyson Foods, Inc. v. Bouaphakeo*,

20    577 U.S. 442, 453–54 (2016) (explaining that "the action may be considered proper under Rule

21    23(b)(3)" if "one or more of the central issues in the action are common to the class and can be

22    said to predominate" (quoting 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,

23    Federal Practice and Procedure § 1778 (3d ed. 2005))). Class certification is also "superior to

24    other available methods for fairly and efficiently adjudicating the controversy" in this case. Fed.

25

26    PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
CLASS NOTICE - 22

R. Civ. P. 23(b)(3). That is because class-wide resolution is the most practical method of addressing the alleged violations at issue. There are thousands of class members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). Thus, for settlement purposes, the requirements for certification of a Rule 23(b)(3) class action are satisfied here.

## II.    THE PROPOSED NOTICE PLAN SATISFIES RULE 23

Once a court determines that it is likely to certify a class under Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances including individual notice to all class members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice can be effectuated through "United States mail, electronic means, or other appropriate means." *Id.* The notice also "must clearly and concisely state in plain, easily understood language": (1) "the nature of the action; (2) "the definition of the class certified"; (3) "the class claims, issues, or defenses"; (4) "that a class member may enter an appearance through an attorney if the member so desires"; (5) "that the court will exclude from the class any member who requests exclusion"; (6) "the time and manner for requesting exclusion"; and (7) "the binding effect of a class judgment on members under Rule 23(c)(3)." *Id.*

The proposed notices fulfill these requirements. The settlement administrator will mail each class member a packet containing the notice via First Class Mail. Before doing so, the administrator will take reasonable steps to ensure it has the correct address for each class member. If the post office returns any envelope to the administrator because of an incorrect address, the

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
CLASS NOTICE - 23

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

administrator will work diligently to obtain an updated address and will promptly mail the envelope to such updated address. Moreover, the proposed notice clearly and concisely states the nature of the action and claims; defines the class; explains that each class may enter an appearance through an attorney if the member so desires and that members can opt out; provides information about the date of the fairness hearing; and notifies the class that the effect of a class judgment is binding on class members. The Court should thus approve the proposed notice.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court grant preliminary approval to the Settlement, direct notice to the class, and schedule a final approval approximately 120 days from the order preliminarily approving the settlement or thereafter at the Court's convenience.

I certify that this memorandum contains 7,054 words, in compliance with the Local Civil Rules.

DATED this 3rd day of January, 2025.

TOUSLEY BRAIN STEPHENS PLLC

By: *s/Kaleigh N. Boyd*
Kim D. Stephens, WSBA #11984
Kaleigh N. Boyd, WSBA #52684
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101-3147
Tel: (206) 682-5600/Fax: (206) 682-2992
*kstephens@tousley.com*
*kboyd@tousley.com*

STUEVE SIEGEL HANSON LLP
J. Austin Moore (*Pro Hac Vice*)
Alexander T. Ricke (*Pro Hac Vice*)
K. Ross Merrill (*Pro Hac Vice*)

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
CLASS NOTICE - 24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: (816) 714-7100
moore@stuevesiegel.com
ricke@stuevesiegel.com
merrill@stuevesiegel.com

***Attorneys for Plaintiffs***

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND TO DIRECT
CLASS NOTICE - 25

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992