1

2

3

4

5

6

7

        The Honorable Ricardo S. Martinez

8
      UNITED STATES DISTRICT COURT
   FOR THE WESTERN DISTRICT OF WASHINGTON
9
            AT SEATTLE

10

11

12

13

14

ANGELA HAMILTON, DANA MCDERMOTT, MELANIE CREEL, SHAMILA HASHIMI, QUINTARA HICKS, KIANA HOWELL, LISA LAZZARA, ALICIA MILLER, SUSIE SCOTT, TERRI SEASTROM, TAYLOR SMITH, AND SARA WOOD, individually and on behalf of all others similarly situated,

           Plaintiffs,

15

16

   v.

17

NUWEST GROUP HOLDINGS, LLC,

18

         Defendant.

Case No. 2:22-cv-01117-RSM

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

**NOTE ON MOTION CALENDAR:**

July 11, 2025

19

20

21

22

23

24

25

26

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS AND COLLECTIVE ACTION
SETTLEMENT - i
Case No. 2:22-cv-01117-RSM

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

## **INTRODUCTION**

2       The Court granted Plaintiffs' motion to preliminarily approve and send notice of this non-

3   reversionary $4.4 million class action settlement to thousands of travel nurses. In doing so, the

4   Court found that it would likely be able to approve the settlement as fair, reasonable, and adequate

5   under Rule 23(e). Class members' reaction confirms that the Court's preliminary approval order

6   was well founded. There have been no objections to the settlement and no requests for exclusion.[1]

7   The lack of opposition from class members—the people being paid and releasing claims as a part

8   of this settlement—confirms what the objective metrics demonstrate: this settlement is fair,

9   reasonable, and adequate, the Court should finally approve it.

10      This $4.4 million settlement resolves claims against NuWest under the Fair Labor

11  Standards Act and various state laws based on two theories of liability. First, Plaintiffs allege that

12  NuWest violated the FLSA by categorizing significant portions of its travel nurses' compensation

13  as stipends and then excluding the value of those stipends from their regular rate of pay resulting

14  in unpaid overtime. The settlement with respect to these claims is limited to those approximately

15  2,300 individuals who filed a Consent to Join in response to the Court's conditional certification

16  Order. Net of all fees and costs, the average settlement check for these workers is approximately

17  $980, and the highest settlement check is over $9,000. There is no claims process for the FLSA

18  claims; instead, upon approval, checks will issue automatically.

19      Second, Plaintiffs allege that NuWest violated state laws by engaging in a pattern and

20  practice of making take-it-or-leave-it demands that its nurses accept lower pay than originally

21  promised in the middle of their contracts or be terminated. With a few days left in the claims

22

23  _____

[1] The Settlement Agreement afforded class members a lengthy 90-day window to object to,
24  request exclusion from, and submit claims under the Settlement Agreement. That period will
    conclude on June 30, 2025, which is 11 days prior to the fairness hearing. Plaintiffs will
25  supplement the record prior to the final approval hearing to the extent any objections or requests
    for exclusion are received.

26  PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
    APPROVAL OF CLASS AND COLLECTIVE ACTION                  **TOUSLEY BRAIN STEPHENS PLLC**
    SETTLEMENT                                                     1200 Fifth Avenue, Suite 1700
                                                                      Seattle, Washington  98101
    Case No. 2:22-cv-01117-RSM - 1                         TEL. 206.682.5600 • FAX 206.682.2992

period (June 30, 2025), 413 class members have submitted claims, which would result in projected average payments of approximately $3,000 *per capita* for those 123 class members who submitted claims supported by documents evidencing a mid-contract rate reduction and projected average payments of approximately $140 *per capita* for the 290 class members who simply attested to suffering a mid-contract rate reduction.

Plaintiffs request the Court grant final approval so that these meaningful settlement payments can issue to the thousands of deserving workers covered by the Settlement Agreement.

## KEY SETTLEMENT TERMS[2]

### I.    THE $4,400,000 NON-REVERSIONARY COMMON FUND

In exchange for the releases described below, NuWest will pay $4,400,000 into a Qualified Settlement Fund administered by Analytics Consulting LLC. That common fund will be used to pay class and collective members, the cost of notice and settlement administration ($94,701), service awards for the 12 named plaintiffs ($5,000 each), Class Counsel's attorneys' fees (one-third of the fund) and expenses ($82,809.62), and a modest reserve fund ($5,000). *See* Sett. Agrmt., ECF No. 128-1 ¶¶ 1.15, 1.26. In terms of scope, only FLSA Collective Members and Mid-Contract Rate Reduction Class Members will release claims through this settlement.[3] The FLSA Collective Members are the approximately 2,300 NuWest travel nurses with overtime claims who previously filed a Consent to Join in the case. *Id*. at ¶ 1.14. Mid-Contract Rate Reduction Class Members are all persons who are, or have been, employed by NuWest at any point from January 1, 2020 through December 20, 2024 as travel nurses and who worked all or part of an assignment for NuWest as a travel nurse. *Id*. at ¶ 1.20. By definition, FLSA Collective

---

[2] Plaintiffs summarize the key terms of the Settlement Agreement here. The full Settlement Agreement was previously filed (*see* ECF No. 128-1), and Plaintiffs explained the terms at length in connection with preliminary approval (*see* ECF No. 127 at 6–9).

[3] Individuals who did file a Consent to Join the FLSA Collective and who are not Mid-Contract Rate Reduction Class Members will not release any claims.

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS AND COLLECTIVE ACTION
SETTLEMENT
Case No. 2:22-cv-01117-RSM - 2

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Members are also Mid-Contract Rate Reduction Class Members. The net fund (the gross amount less Court approved payments for settlement administration, service awards, and Class Counsel's fees and expenses), will be allocated 85% to the FLSA Collective Members and 15% Mid-Contract Rate Reduction Class Members. *Id*. at ¶ 4.5.

The FLSA Collective Members share of the net settlement fund will be allocated *pro rata* based on individuals' overtime damages under the FLSA, but with each individual allocated at least $100. There will be no claims process for the FLSA Collective Members to receive the overtime portion of their settlement shares. Following final approval, they will simply be mailed a check. *Id*. Those checks are meaningful. The average *per capita* check for an FLSA Collective Member will be approximately $980 net of all fees and costs. The highest settlement check will be more than $9,000, and more than 300 FLSA Collective Members will receive over $2,000. Ricke Decl. at ¶¶ 5–6.

Mid-Contract Rate Reduction Class Members can submit two types of claims under the settlement. Those class members with documented wage losses due to a mid-contract rate reduction are eligible to claim a *pro rata* portion of 90% of the Mid-Contract Rate Reduction Class settlement allocation. With a few days left in the claims period (June 30, 2025), 123 Mid-Contract Rate Reduction Class Members have submitted claims supported by documentation. Applying that claims rate, the average estimated settlement check for these workers will be approximately $3,000. Those Mid-Contract Rate Reduction Class Members who attest they experienced a mid-contract rate reduction but do not have documents supporting losses can likewise submit a claim for an even portion of the remaining 10% of the allocation. *Id*. Again, as it stands, 290 Mid-Contract Rate Reduction Class Members have submitted claims simply

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS AND COLLECTIVE ACTION
SETTLEMENT
Case No. 2:22-cv-01117-RSM - 3

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

attesting to a mid-contract rate reduction, which results in an average check of approximately $140 for these nurses. Ricke Decl. at ¶¶ 7–11

All settlement payments made to FLSA Collective Members and Mid-Contract Rate Reduction Class Members will be treated as 35% wages (reported on an IRS Form W-2) and 65% penalties and interest (reported on an IRS Form 1099). Sett. Agrmt. at ¶ 4.6.

## II.    THE SCOPE OF THE RELEASE

The FLSA Collective Members and Mid-Contract Rate Reduction Class Members both will release claims that are reasonably tailored to the claims for which those workers are being compensated. First, FLSA Collective Members will release claims that were or could have been asserted based on the facts alleged in the operative Complaint through the date of the Settlement Agreement. *Id*. at ¶ 9.1. The release for FLSA Collective Members (all of whom have already filed a Consent to Join the case) is broader than the Mid-Contract Rate Reduction Class release, which is limited to mid-contract rate reduction claims and any other claims related to or arising from those claims that were or could have been asserted based on the facts alleged in the operative Complaint through the date the Settlement Agreement. *Id*. Importantly, Mid-Contract Rate Reduction Class Members will not release FLSA claims unrelated to the rate reduction through this settlement unless they are also FLSA Collective Members.[4]

## III.    THE RESULTS OF THE NOTICE PROCESS

On April 1, 2025, Analytics mailed individualized notices to each FLSA Collective Member and each Mid-Contract Rate Reduction Class Member. Because the groups are releasing different claims, one type of notice was mailed to FLSA Collective Members (*see* Mitchell Decl. at Exhibit A) and another type of notice was mailed to Mid-Contract Rate Reduction Class

---

[4] NuWest has agreed to class certification and to not challenge the conditional collective action certification for settlement purposes only. If the Court does not approve the settlement, NuWest reserves the right to contest class certification and to seek to decertify the collective action.

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS AND COLLECTIVE ACTION
SETTLEMENT
Case No. 2:22-cv-01117-RSM - 4

1  Members—in other words, those class members who did not previously file a Consent to Join)

2  (*see* Mitchell Decl. at Exhibit B). Both groups were also sent a copy of the Claim Form to make

3  a claim against the portion of the fund allocated to mid-contract rate reduction claims (*see*

4  Mitchel Decl. at Exhibit C). Out of 8,636 unique individuals covered by both groups, 144 notices

5  were returned with an updated address and were remailed. Another 883 notices were returned

6  without a forwarding address but 395 new addresses were identified following a skip trace and

7  were remailed. Out of 8,636 class members, only 488 notices (or 5%) were ultimately

8  undeliverable. This represents an approximately 95% successful notice rate by direct,

9  individualized notice through U.S. Mail. Mitchell Decl. at ¶¶ 8–10.

10      The 90-day window to object, request exclusion (for Mid-Contract Rate Reduction Class

11  Members who are not FLSA Collective Members), and submit claims runs on June 30, 2025. To

12  date, no class members have objected or requested exclusion. Mitchell Decl. at ¶ 13. Further,

13  there have been 413 claims submitted to Analytics. 123 of the claims are supported by documents

14  and entitled to participate in 90% of the Mid-Contract Rate Reduction Class allocation. Sett.

15  Agrmt. at ¶ 4.5. Another 290 claims are supported only by an attestation as to a mid-contract rate

16  reduction and are entitled to participate in 10% of the Mid-Contract Rate Reduction Class

17  allocation. *Id*. Although the claims have not yet been approved and allocated specific amounts,

18  all claims submitted have been submitted by verified class members. Mitchell Decl. at ¶ 12. In

19  other words, these are not fraudulent claims from non-class members.

20                                  **<u>ARGUMENT</u>**

21  **I.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

22      Settlements of both class actions and collective actions require final judicial approval.

23  Class actions require analysis of Rule 23(e)'s factors to ensure the settlement is fair, reasonable,

24  and adequate. *See* Fed. R. Civ. P. 23(e)(2); *Stedman v. Progressive Direct Ins. Co.*, 2023 WL

25  5974865, at *3 (W.D. Wash. Sept. 14, 2023). Likewise collective action settlements require the

26  PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
    APPROVAL OF CLASS AND COLLECTIVE ACTION
    SETTLEMENT
    Case No. 2:22-cv-01117-RSM - 5

Court to confirm that the agreement is a fair and reasonable resolution of a *bona fide* dispute under the FLSA. *Chery v. Tegria Holdings LLC*, 2024 WL 3730981, at *2 (W.D. Wash. July 31, 2024); *see also Kerzich v. County of Tuolumne*, 335 F. Supp. 3d 1179, 1183 (E.D. Cal. 2018) ("Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court."). Because the issues are related, Plaintiffs address approval of both the class and collective claims in the context of Rule 23(e)'s more extensive requirements.

In connection with preliminary approval, the Court found it would likely be able to approve the settlement as fair, reasonable, and adequate under Rule 23 and that the settlement was a fair and reasonable resolution of a *bona fide* dispute under the FLSA. ECF No. 129 at ¶¶ 2, 11. There is no reason for the Court to deviate from its sound findings. In fact, that no class members have objected to or requested exclusion from the Settlement with only a few days remaining in the 90-day notice period reinforces that the Court's findings were correct. Mitchell Decl. at ¶ 13; *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement.").

### A.    The settlement is fair, reasonable, and adequate.

Under Rule 23(e)(2), a court may approve a settlement as "fair, reasonable, and adequate" after considering whether: (1) "the class representative and class counsel have adequately represented the class"; (2) "the proposal was negotiated at arm's length"; (3) "the relief provided for the class is adequate"; and (4) "the proposal treats class members equitably relative to each other." The court also considers the factors identified by the Ninth Circuit in *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004), which largely overlap with the Rule 23(e)(2) factors. These factors, addressed in turn below, support final approval.

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS AND COLLECTIVE ACTION
SETTLEMENT
Case No. 2:22-cv-01117-RSM - 6

**1.    Plaintiffs and their counsel have and will represent the class and collective members adequately.**

The first Rule 23(e)(2) factor considers whether the class representatives and counsel have provided adequate representation. Fed. R. Civ. P. 23(e)(2)(A). Courts analyze this factor in the same manner that they evaluate adequacy under Rule 23(a)(4). *See O'Connor v. Uber Techs., Inc.*, 2019 WL 1437101, at *6 (N.D. Cal. Mar. 29, 2019). Adequacy is satisfied when (1) the named plaintiff and counsel have no conflicts with the class; and (2) plaintiff will "prosecute the action vigorously." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

The best indication of adequacy is that Plaintiffs engaged counsel who have obtained a favorable result for class and collective members. As discussed below, this $4.4 million, non-reversionary settlement will make meaningful payments to collective members (approximately $980 *per capita* on average with the highest payment exceeding $9,000) and have created a claims process for Mid-Contract Rate Reduction Members that will make estimated payments of around $3,000 *per capita* on average to class members with claims supported by documents and $140 *per capita* on average to class members with claims supported only by attestation.[5] Class Counsel have significant experience litigating wage and hour class and collective actions and they believe this settlement represents a strong result for the workers.[6] *See* Class Counsel Decl., ECF No. 131 at ¶¶ 2–18. This factor supports final approval of the settlement.

---

[5] With respect to the Mid-Contract Rate Reduction estimates, these estimated payments are projections based on the claims information submitted as of this filing recognizing that there are three days left in the claims period. Ricke Decl. at ¶¶ 6, 11.

[6] After winning a class and collective jury verdict for meat-packing plant workers, Judge Marten (Ret.) of the District of Kansas observed of the wage and hour lawyers at Stueve Siegel Hanson that "it appears that plaintiffs' counsel's experience in wage hour class actions has unmatched depth." *Garcia v. Tyson Foods, Inc*., 2012 WL 5985561, at *4 (D. Kan. Nov. 29, 2012), *aff'd*, 770 F.3d 1300 (10th Cir. 2014).

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
Case No. 2:22-cv-01117-RSM - 7

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1      **2.    The settlement is the product of arm's-length negotiations.**

2          The second Rule 23(e)(2) factor asks whether "the proposal was negotiated at arm's

3  length." Fed. R. Civ. P. 23(e)(2)(B). The answer here is yes. The parties reached the settlement

4  after two separate, full-day, arm's-length mediations overseen by experienced mediator Professor

5  Lynn Cohn of Northwestern University Pritzker School of Law. *See In re Bluetooth Headset*

6  *Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (noting that the "presence of a neutral

7  mediator . . . weigh[s] in favor of a finding of non-collusiveness"); *Torres v. Mercer Canyons,*

8  *Inc.*, 2017 WL 11675391, at *2 (E.D. Wash. Mar. 29, 2017) (same).

9          Further, mediation occurred only after collective certification and exchange of necessary

10 information to value the claims. Before entering mediation, the parties engaged in extensive

11 informal and formal discovery, which provided Class Counsel with sufficient information to

12 reach a well-informed settlement. *See also Nat'l Rural Telecommc'ns, Coop. v. DIRECTV, Inc.*,

13 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine

14 arms-length negotiation is presumed fair."); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034,

15 1042 (S.D. Cal. 2015) ("[A]s long as the parties have sufficient information to make an informed

16 decision about settlement, 'formal discovery is not a necessary ticket to the bargaining table.'"

17 (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998))).

18         Lastly, Class Counsel's view that the settlement is fair, reasonable, adequate further

19 supports settlement approval. Class Counsel have decades of wage and hour experience and have

20 successfully litigated many complex employment and wage and hour matters such as this one to

21 favorable resolutions. *See* Class Counsel Decl., ECF No. 131 at ¶¶ 2–18; *Nat'l Rural*

22 *Telecommc'ns Coop.*, 221 F.R.D. at 528  (noting that courts should give "[g]reat weight . . . to

23 the recommendation of counsel, who are most closely acquainted with the facts of the underlying

24 litigation" (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.

25 1997))). The second Rule 23(e)(2) factor supports final approval.

26 PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS AND COLLECTIVE ACTION
SETTLEMENT
Case No. 2:22-cv-01117-RSM - 8

**3.    The settlement provides adequate relief for the class and collective.**

The third Rule 23(e)(2) factor focuses on the adequacy of the relief provided to the class. *See* Fed. R. Civ. P. 23(e)(2)(C). When determining whether such relief is adequate, courts consider: (1) "the costs, risks, and delay of trial and appeal"; (2) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; (3) "the terms of any proposed award of attorney's fees, including timing of payment"; and (4) "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

> **a.    The relief class and collective members will receive presents a fair compromise given the costs, risks, and delay of trial and appeal.**

The Settlement Agreement creates a $4.4 million non-reversionary settlement fund. Sett. Agmt. at ¶ 1.26. It allocates 85 percent of the net settlement fund to FLSA Collective Members and the remaining 15 percent to Mid-Contract Rate Reduction Class Members.[7] *Id.* at ¶ 4.5(a). Class Counsel's damages analysis—created using complete wage data for the overtime claims and a sampling and exhaustive manual review of wage documents for the mid-contract rate reduction claims—showed that various levels of exposure for NuWest depending on the assumptions made. Ricke Decl. at ¶¶ 5–11.

For example, if the damages on the overtime claims were cut-off in mid-2022 (*i.e.*, crediting NuWest's alleged "de-coupling" of stipends and hours worked), Class Counsel calculated NuWest's exposure for unpaid overtime *and* liquidated damages under the FLSA as $3.63 million. In Class Counsel's view, these damages are strong under the Ninth Circuit's

---

[7] The net settlement amount is the gross amount, $4,400,000, minus deductions for the cost of settlement administration, the approved attorney fees and expenses, the approved service awards to Plaintiffs, and a modest reserve fund. Sett. Agmt. at ¶ 1.15.

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS AND COLLECTIVE ACTION
SETTLEMENT
Case No. 2:22-cv-01117-RSM - 9

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Clarke* decision. That said, although less certain, the damages on the FLSA claims could be much higher if Plaintiffs' other theories of liability were successful. For example, Plaintiffs alleged that NuWest's practice of cutting stipends mid-contract showed that these stipends actually functioned as wages (and not as expense reimbursement). Ricke Decl. at ¶ 6.

With respect to the mid-contract rate reduction claims, damages were less certain and potentially varied considerably based on contested factual and legal positions of the parties. NuWest provided comprehensive documentary and wage information on a ten percent sample of the FLSA opt-ins, which was used to extrapolate a mid-contract rate reduction occurrence rate and average damage amount for a putative Rule 23 nationwide class. Ricke Decl. at ¶ 7.

NuWest initially provided a summary of the assignment agreements or contracts signed by each nurse. Class Counsel cross-referenced the summary with each nurse's pay data to identify and calculate the potential damages for all apparent mid-contract rate reductions. This analysis was based on the face of the data and the summary—irrespective of the potential rationales for rate reductions. This analysis resulted in a maximum potential exposure of $12,140,343. NuWest then provided a contract overlay for each nurse in the sample identified as having potentially experienced a mid-contract rate reduction. Following manual review of the contracts, the maximum potential exposure was revised down to approximately $5.4 million. The contract overlay indicated that certain mid-contract rate reductions from the initial analysis were, for example, rate reductions occurring between contracts or as part of contract negotiations—not necessarily fraudulent or improper reductions occurring in the middle of a nurse's assignment. NuWest contested the revised estimate, contending that its maximum exposure was closer to $1 million (notwithstanding its various legal arguments that it contended were dispositive). NuWest argued that it could explain most of the remaining mid-contract rate reductions, claiming, for example, certain mid-contract rate reductions were in fact the byproduct of a nurse agreeing to

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS AND COLLECTIVE ACTION
SETTLEMENT
Case No. 2:22-cv-01117-RSM - 10

1    extend their assignments at a lower rate. The parties did not resolve their differences on this issue,

2    and this damages estimate is still hotly contested. Ricke Decl. at ¶ 8.

3        In Class Counsel's view, allocating the net fund in proportion to the strength of the two

4    groups' base-line damages was appropriate. This resulted in the 85% allocation to the FLSA

5    Collective and 15% allocation to the Mid-Contract Rate Reduction Class. This allocation reflects

6    that proportional base-line damages spread as well as the relative strength of the claims. Ricke

7    Decl. at ¶¶ 5–11. As explained above, the average projected settlement payments for these

8    various groups are significant—$980 *per capita* on average for FLSA Collective Members and

9    $3,000 and $140 *per capita* on average for Mid-Contract Rate Reduction Class Members with

10   claims supported by documents and attestation, respectively. *Id*.

11       This settlement is thus a strong result given the costs, risk, and delay that would come

12   with continued litigation. *See* Fed. R. Civ. P. 23(e)(2)(C)(i); *In re Linkedin User Privacy Litig.*,

13   309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Immediate receipt of money through settlement, even if

14   lower than what could potentially be achieved through ultimate success on the merits, has value

15   to a class, especially when compared to risky and costly continued litigation."). If litigation were

16   to proceed, there is a risk that the Court might not certify the class or might decertify the

17   collective. *See Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 392 (C.D. Cal. 2007) ("The value

18   of a class action 'depends largely on the certification of the class,' and . . . class certification

19   undeniably represents a serious risk for plaintiffs in any class action lawsuit." (quoting *In re

20   GMC Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 802 (3d Cir. 1995))).

21       Moreover, although Class Counsel believe in the strength of the case, orders in similar

22   cases (involving allegations that an employer engaged in and failed to disclose a pattern and

23   practice of reducing travel nurses' wages mid-contract) show that uncertainty remains. *See, e.g.*,

24   *Egan v. Fastaff, LLC*, 2024 WL 719006 (D. Colo. Jan. 31, 2024) (denying motion to dismiss as

25   to portion of travel nurses' complaint alleging tort-based bait-and-switch claims but granting it

26   PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
     APPROVAL OF CLASS AND COLLECTIVE ACTION
     SETTLEMENT
     Case No. 2:22-cv-01117-RSM - 11

as to contract-based claims). Additionally, even though the overtime claims here are similar to those at issue in *Clarke*, Plaintiffs still would have had to survive a decertification motion, defeat summary judgment, and prevail at trial. In addition to carrying risk, it also would take years before these workers were paid. The "tangible, immediate benefits" of settlement outweigh the uncertainties, expense, and delays associated with continued litigation. *Ebarle v. Lifelock, Inc.*, 2016 WL 234364, at *8 (N.D. Cal. Jan. 20, 2016); *see also DIRECTV*, 221 F.R.D. at 526 ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

> **b.    Class and collective members are eligible for relief through straightforward processes.**

FLSA Collective Members need not file claim forms to receive a settlement payment. Instead, they will automatically receive a check for their settlement amounts following final approval. Sett. Agmt. at ¶ 4.5(b).

Mid-Contract Rate Reduction Class Members are required to submit claims to be eligible for payments. *Id.* These class members could make one of two types of claims: (1) a "Documented Mid-Contract Rate Reduction Claim," which requires documentation that tends to reasonably establish the class member experienced a mid-contract rate reduction and the amount of the loss; or (2) a "No Document Mid-Contract Rate Reduction Claim," which requires only the identification of an assignment worked for NuWest during the class period, the name and location of the healthcare facility for the assignment, the dates of the assignment, and a description of the type of rate reduction experienced. Sett. Agmt. ¶ 4.5(c). With three days remaining in the claims period, class members have submitted 413 claims, with 123 supported by documents and 290 supported by attestation. This claims rate is consistent with Class Counsel's conservative projection of an occurrence rate of mid-contract rate reductions based on extrapolation of around 400 instances. Ricke Decl. at ¶ 11. The proposed methods for distributing

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS AND COLLECTIVE ACTION
SETTLEMENT
Case No. 2:22-cv-01117-RSM - 12

**Tousley Brain Stephens PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  the settlement payments to class members are fair, reasonable, and adequate and warrant final

2  approval. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).

3  **c.  Class Counsel sought awards of attorneys' fees, expenses, and**

4  **service awards for Plaintiffs that are reasonable.**

5  By separate motion, Class Counsel sought one-third of the fund as attorneys' fees plus

6  reimbursement of $82,809.62 in advanced expenses. ECF No. 130 at 4–12. Class Counsel's

7  requested fee is justified for the reasons set out in that motion. *Id.*; *Davis v. Symetra Life Ins. Co.*,

8  2025 WL 1434727, at *5 (W.D. Wash. May 19, 2025) (approving 1/3 fee request in $32.5 million

9  settlement in case litigated by attorneys from Stueve Siegel Hanson and Tousley Brain Stephens).

10  By that same motion, Class Counsel also sought a $5,000 service award for each Plaintiff

11  to compensate them for their roles in bringing about this favorable settlement. ECF No. 130 at

12  13–14; *Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017)

13  ("Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable."). Class

14  Counsel and Plaintiffs stand on that motion with respect to the reasonableness of the requested

15  awards. As further evidence of their reasonableness, with only three days remaining in the 90-

16  day objection window, no class members have objected to the requested attorneys' fees,

17  expenses, or service awards. Mitchell Decl. at ¶ 13. This factor weighs in favor of final approval

18  of the settlement.

19  **d.  There are no other agreements required to be identified under**

20  **Rule 23(e)(3).**

21  The only agreement among the parties is the Settlement Agreement. Ricke Decl., ECF

22  No. 128 at ¶ 19.

23  **4.  The settlement treats all class and collective members equitably.**

24  The final Rule 23(e)(2) factor considers whether the settlement "treats class members

25  equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). As explained above, the Settlement

26  PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS AND COLLECTIVE ACTION
SETTLEMENT
Case No. 2:22-cv-01117-RSM - 13

Agreement allocates 85 percent of the net settlement amount to the FLSA Collective Members and 15 percent to the Mid-Contract Rate Reduction Class Members. Sett. Agmt. ¶ 4.5(a). This allocation recognizes that the FLSA Collective Members possess claims that are more certain as to both liability and damages under existing Ninth Circuit case law. *See, e.g.*, *Clarke*, 987 F.3d 848. That said, in Class Counsel's view, the settlement allocation tracks the approximate distribution of likely recovery between the overtime claims and the mid-contract rate reduction claims considering the relative exposure posed by the two types of claims. Ricke Decl. at ¶¶ 5–13. The settlement is fair, adequate, reasonable, and in the best interests of the class and collective members given the uncertainty of continued litigation.

Plaintiffs request the Court grant final approval of the settlement.

## II.    CLASS AND COLLECTIVE CERTIFICATION REMAIN APPROPRIATE

The Court previously certified the Mid-Contract Rate Reduction Class pursuant to Rule 23(a) and (b)(3) in connection with preliminary approval of the settlement. *See* ECF No. 129 at ¶ 4. Plaintiff's motion for preliminary approval explained at length why each Rule 23 factor was satisfied. *See* ECF No. 127 at 19–24. There is no reason for the Court to deviate from that finding.

Likewise, the Court can grant final collective certification of the FLSA Collective for many of the same reasons set out in its Order granting conditional certification. *Hamilton v. NuWest Grp. Holdings, LLC*, 2023 WL 3582939, at *2 (W.D. Wash. May 22, 2023) (finding collective certification appropriate because "NuWest tied the value of the per diem stipends to hours worked (as opposed to expenses incurred) and (2) that NuWest excluded the value of these stipends from the "regular rate" when paying overtime."). Plaintiffs thus request the Court grant final class and collective certification in connection with final approval of the settlement.

## CONCLUSION

Plaintiffs request the Court grant final approval of the Settlement Agreement, approve the requested awards of attorneys' fees, expenses, and service awards, grant final class and collective

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS AND COLLECTIVE ACTION
SETTLEMENT
Case No. 2:22-cv-01117-RSM - 14

1    certification for settlement purposes, direct the parties to implement the terms of the Settlement

2    Agreement, and enter the proposed order that the parties will submit in advance of the July 11,

3    2025 hearing on this motion.

4          I certify that this Motion contains 4,697 words, in accordance with the Local Civil

5    Rules.

6          //

7          //

8          DATED this 27th day of June, 2025.

9                                              **TOUSLEY BRAIN STEPHENS PLLC**

10
                                               By: *s/ Kim D. Stephens, P.S.*
11                                             Kim D. Stephens, WSBA #11984
                                               By:*s/ Kaleigh N. Boyd*
12                                             Kaleigh N. Boyd, WSBA #52684
                                               1200 Fifth Avenue, Suite 1700
13                                             Seattle, WA 98101-3147
                                               Tel: (206) 682-5600/Fax: (206) 682-2992
14                                             *kstephens@tousley.com*
                                               *kboyd@tousley.com*
15

16                                             **STUEVE SIEGEL HANSON LLP**
                                               J. Austin Moore (*Pro Hac Vice*)
17                                             Alexander T. Ricke (*Pro Hac Vice*)
                                               K. Ross Merrill (*Pro Hac Vice*)
18                                             460 Nichols Road, Suite 200
                                               Kansas City, Missouri 64112
19                                             Tel: (816) 714-7100
                                               moore@stuevesiegel.com
20                                             ricke@stuevesiegel.com
                                               merrill@stuevesiegel.com
21

22                                             ***Class Counsel***

23

24

25

26    PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
      APPROVAL OF CLASS AND COLLECTIVE ACTION                    **TOUSLEY BRAIN STEPHENS PLLC**
      SETTLEMENT                                                      1200 Fifth Avenue, Suite 1700
      Case No. 2:22-cv-01117-RSM - 15                                  Seattle, Washington  98101
                                                                 TEL. 206.682.5600 • FAX 206.682.2992